In the Case of MICHAEL FURBEE'S LAND.

Court of Chancery.  Kent.  In Vacation.  April, 1822.

*Ridgely's Notebook IV, 7.*

6

The following is the opinion of THE CHANCELLOR.

In the case submitted to the Chancellor on the recognizance entered into by Elias Shockley on his acceptance in the Orphans' Court of the land of Michael Furbee, two questions arise. First, whether by the account passed May 27, 1817, by Molton Rickards, administrator of Mary Furbee, wherein he charges himself with $474.73, her portion of the appraised value of her father's land, as being received from Elias Shockley, the recognizor; and by the several guardian accounts passed the same day by Elias Shockley, guardian of Sally Ann, Elizabeth and Priscilla, sisters, and with their brother Jonathan and sister Nancy, heirs at law of said Mary, wherein he credits them each by her share of her sister Mary's estate, including this $474.73 as being received from Molton Rickards the administrator of said Mary, the land of Elias Shockley is discharged from said recognizance as to Mary's share of the valuation money. And secondly, whether Sally Ann, Elizabeth and Priscilla, three of the heirs at law of said Mary, can proceed on said recognizance to recover their shares of Mary's portion of said valuation money.

First. I am [of] opinion that the accounts passed by Molton Rickards and Elias Shockley in manner aforesaid do not discharge the lands of Elias Shockley from his recognizance as to Mary's share of the appraised value of her father's land. No money, it seems, passed from the recognizor to Mr. Rickards, the administrator, and none was paid by the administrator to Mr. Shockley, the guardian of the three children. This was not a real transaction. It was done rather for the convenience of the guardian than with a view to the security of his wards. The land of Mr. Shockley and of his surety were bound by the recognizance, and if this kind of transfer of debt could prevail, then the children, without the payment of any money, would have lost the security the law intended for them by taking the recognizance. This is evident, for it now appears that the surety in the guardian bond is insolvent, and the recognizance is available, for it has produced funds sufficient to satisfy their shares of the valuation money. It is true that a real payment of money by a recognizor to a guardian may lessen the security and be the cause of the loss of the debt, but that would be the ward's misfortune, the transaction being *bona fide* and in compliance with

the obligation to pay. But here it seems to have been done merely to shift the responsibility from Mr. Shockley as recognizor to Mr. Shockley as guardian, and to exonerate the land of Mr. Shockley and of his surety in the recognizance.

Further, the Act of Assembly, 1 Del.Laws 92, requires that administrators and guardians should actually receive the money before their discharges shall be binding on the orphan or minor; therefore, according to the true intention of this Act, these credits given in the accounts are not effectual to exonerate Mr. Shockley's land from the lien of the recognizance. The sum carried to the credit of Mary Furbee's estate in Molton Rickards' administration account is $474.73 without any interest. The whole sum, principal and interest, was $538.88, that is, $474.78 principal and $64.10 interest from February 23, 1815, to May 27, 1817; so that there is an evident mistake as to the amount and not a complete discharge of the recognizance, supposing these accounts had an effect which I think they are not entitled to.

Secondly, it does not appear when Mary Furbee died. Letters of administration were granted on her estate March 7, 1815; and if she died before February 23, 1815, when the lands were ordered to Mr. Shockley, the five surviving children of Michael Furbee were each entitled to one fifth part of the said valuation money. In that case, Mary's share of the land passed to her brother and sisters as fully as if they had been her children. They were, as to real estate, her legal representatives, and the share of each of them of the appraised value of the land was one fifth part. So that in the event here contemplated, I am clearly of opinion that Sally Ann, Elizabeth and Priscilla could each recover on the recognizance one fifth part of said appraised value. I will remark that if, before the land was ordered to Elias Shockley, Mary had died of full age, indebted by judgment, or had aliened her portion of the land, still the proceedings in the Orphans' Court would have been good, but her judgment creditor or alienee would have had a lien on her part of the valuation money. So if she had mortgaged her share of the land; for no act of hers could have prevented the operation of the intestate laws or discharged her share of the appraised value from the lien of her creditor or alienee.[1]

But if Mary died after the land had been ordered to Elias Shockley, and he had entered into the recognizance, her interest, by the operation of law, lost all the quality of real estate, and her share of the appraised value secured to her by the recog-

---

[1] Footnote by Ridgely, "See 2 Yeates 326."

nizance could be recovered only by her personal representative. Her heirs, as such, could have no claim upon the recognizor, but like every other debt, it was to be collected and distributed by her administrator; and of course in such case, none but Molton Rickards, her personal representative, could enforce the payment of her share of the recognizance.

Notwithstanding, I think that in a court of equity, the administrator being insolvent, a receiver might be appointed for the recovery of Mary's share of the money for her heirs.[2]

The following is the form of certificate given by THE CHANCELLOR and annexed to the statement:

> I am of opinion that the accounts passed by Molton Rickards, administrator, and Elias Shockley, guardian, respectively, wherein they account for Mary Furbee's share of the appraised value of the land of her father, Michael Furbee do not extinguish the lien of the recognizance entered into by Elias Shockley in the Orphans' Court when the land was ordered to him.
>
> I am also of opinion that, if Mary Furbee died before February 23, 1815, when the land was ordered to Elias Shockley, Priscilla, Elizabeth and Sally Ann, three of the legal representatives of Mary as to this land, were entitled to levy by virtue of a *scire facias* for their use on the said recognizance, one fifth part each of the appraised value of said land. But if Mary died after the land was ordered to Elias Shockley, her share of the appraised value became changed into personalty by the operation of the law, and can be recovered by Molton Rickards only, her administrator, by *scire facias* on said recognizance. In the latter case, all difficulty about the insolvency of the administrator may be obviated; for the Court of Chancery, on a bill filed, might appoint a receiver to sue for these three children's proportions of Mary's share of the appraised value in the name of the administrator, such receiver giving security to indemnify the administrator.
>
> (Signed) *Nicholas Ridgely.* May 4, 1822.

---

[2] Footnote by Ridgely, "Executor insolvent, on a bill filed, a receiver will be appointed who may bring actions; and if persons are about to pay money to an insolvent executor, the court will restrain him from receiving it. Such receiver must give security to indemnify the administrator. *Taylor v. Allen,* 2 Atk. 213; *Atterson v. Mair,* 4 Bro.C.C. 277; 2 Ves.Jr. 95. A bill will not lie by creditors or next of kin against a debtor to the estate unless against persons who have possessed themselves of the estate, or there is collusion with the representative. *Newland v. Champion,* 1 Ves.Sr. 105; *Doran v. Simpson,* 4 Ves.Jr. 651; *Elmslie v. McAulay,* 3 Bro.C.C. 624."